Good morning, your honors, Jim Rountree, I represent the plaintiff, Brian Hargiss. I have three issues to address here this morning. The first has to do with the jurisdiction of the district court. I wanted to file the suit that I filed in state court, I wanted to file it in U.S. district court, but I was filing an action under the direct action statute against a liability insurer for Louisiana torch tasers. Let me just cut you off with the past there. You didn't cite a single case, I do not believe, that held that when judgment has already been entered against the torch taser that you're proceeding against the insurance company after that is a direct action case. Well, Todd didn't hold that, but this court in Todd said that. The court said, Todd v. Steamship Mutual Underwriting, Todd's suit is authorized by the Louisiana direct action statute, which allows injured individuals to proceed directly against insurers when an insured torch taser is insolvent. Now, you can turn that statement around and say there is no case that holds simply having a judgment against the torch taser precludes there being a direct action. I have read every case cited, every case cited by opposing counsel and in the report and in the presentation of the magistrate judge, all of them are explicable on other basis, mainly because the statutes under which they were filed required that there be a judgment obtained against the insured before proceeding against the insurance company. By definition, that's not a direct action. A direct action is one in which, and this is very clear, actually. In Hernandez, this court said, Congress intended that wherever a party claiming to have suffered injuries or damages for which another is legally responsible is entitled to sue the other's liability insurer without joining the insured and without having first obtained a judgment against the insured. That's exactly what we have here. We have a statute that permits an injured party to sue the torch taser's insurance company without joining the insured and without getting a judgment first. That language is almost identical to the language in Congress's allied professional insurance company, which was cited four times by the magistrate judge for the proposition that you just stated, and in that case, the only difference is, the court said, or rather than and. This circuit has recognized that courts have uniformly defined a direct action to refer to those cases in which a party suffering injuries or damages for which another is legally responsible is entitled to bring suit against the other's liability insurer without joining the insured or first obtaining a judgment. So the only difference is and and or, but in Kong, the court went on to explain that in 1964, Congress amended the 1332 to eliminate diversity jurisdiction oversuits on certain claims in which both parties are local residents with, well, I'm sorry, the language I was looking for is not here. The court went on to explain in Florida, it is imperative that the individual claimant get a judgment against the tortfeasor before proceeding against the insurance company, and that was followed in Virginia just as well, the court in Virginia in the Gateway case said Virginia does not have a direct action statute but requires that the injured party first proceed against the tortfeasor and get a judgment before he has a right of action against the insurance company. In Louisiana, the only right of action that an injured party has against an insurance company for the tortfeasor is the direct action statute. That is a Louisiana Supreme Court case. Oh, goodness. Swallow v. Smith True Value, it is the sole procedural right of action that an injured party has against an insurance company. So this is a suit by an injured party against the liability insurer for tortfeasors who are Louisiana residents, and that, by definition, excludes diversity jurisdiction. 1332 says, in any direct action, which this is by necessity, against an insurer of a policy or contract of liability insurance, to which action the insured is not joined as a party defendant, such insurer shall be deemed a citizen of the state of the insured. That is clear beyond doubt. We have an action by a Louisiana injured party, a direct action, by definition, against the liability insurer for Louisiana tortfeasors without joining the tortfeasors. We did get a judgment, but we weren't required to. Are you planning to spend your whole argument on remand? I'm sorry? You've used about half of your time on remand. Are you willing to get into a couple of the other issues? I certainly am. You had a question, and I wanted to answer you. Well, I do, as a matter of fact, because, I mean, you're the appellee on the Criminal Act Exclusion, and you're also, well, you're partly the appellee, partly the appellant, but you're also the appellee on the Cooperation Clause. Let me take care of the Cooperation Clause quickly. There are three elements that a party must prove in order to have a Cooperation Clause defense. Well, actually, there are three obstacles here, but one of them is the easiest. The insurance company is required to show a diligent effort in order to obtain the information. That's not what the contract of insurance says. That's what cases have said repeatedly. They must show material prejudice and a diligent effort to get the information. In this case, and I've cited all these cases. I mean, I can pull them out again, but as you pointed out, I'm running out of time. Diligent effort is an element of the defense, and Peslich said it did not have to make a diligent effort. On page 61 of its brief, it said it was not required to make a diligent effort to obtain information. Finally, because Peslich did not receive notice, notice of the claim, satisfying the conditions of H1A, any duty to investigate breaches of policy and conditions never came into play. The court specifically held that Peslich did get notice, and so the whole basis of . . . It got notice in such a way that any reasonable observer would have said, oh, this is a meaningless claim. It got notice . . . It didn't even say that a lawsuit had been filed for quite a while. It got notice in accordance with the policy, and it did not appeal the judgment to that effect. That is res judicata. Wait a minute. Wait a minute. Res judicata as to who? As to Peslich. Oh, okay. It got notice . . . Okay. It got notice of a claim. Yes. In accordance with . . . But the insurance contract says that the insured, which was Elslep, which was the insurance had to cooperate, that the insured had the duty to cooperate, and I've just recently been down this road in another case. Cooperate should mean that Elslep would have informed them that your client was steadily moving toward trial, that you had a $500,000 settlement demand, that he had suffered serious injury of some kind, that you had had two mediation conferences, that counsel for Elslep themselves said, I think this is going to be well over the retention effort, and yes, I mean, I don't see evidence of cooperation there. Well, there are two answers to that, one of which is that under the direct action statute, once the right vests, as the judge pointed out, the lack of cooperation does not affect the liability . . . And I think, so you're distinguishing there between the notice of claim cases, where the state supreme court has said that the plaintiff stands in the shoes of the insured party, right? And if the insured party didn't comply with the contract, the plaintiff doesn't get a better deal than the insured party, so you're trying to distinguish the cooperation duty, is that correct? No. I'm pointing out that that is a requirement, that is an element of the defense, that Peslich did not even attempt to prove that there was fraud and collusion. But one other point that I think is very important, I have not found a single case on cooperation in which the insurance company made no effort, almost all of them involve cases where the insurance company wants a sworn statement from the insured, or evidence of loss, or . . . and there are a few of them that go to default judgment before they're reported. I have not seen a case where the insurance company made no effort whatsoever to get information and violated the cooperation clause. The case that is most frequently cited by Peslich is the United . . . it's not a Supreme Well, the judge here . . . I don't want to . . . we'll give you time. We have time. But the judge here didn't talk about the way you're talking about the issue. The judge said, while the Louisiana court has determined that the failure to make and timely report a claim precludes the third party's right of action, this judge was making an eerie guess that in the absence of fraud and collusion, a breach of the cooperation clause in a claims-made policy does not preclude a direct action. That was his reasoning. That was . . . are you ready for . . . And then he further found, at some point, I'm not sure whether it was . . . I found these orders somewhat confusing. He further found that there was a genuine issue as to whether the cooperation clause had been breached. So . . . He found that there was no prejudice and that the insurer made no diligent effort to get the information. There's no finding that the cooperation clause was breached. He found, at some point, that there was a genuine issue of material fact about that. I'm sorry, but I can't . . . Well, then maybe I . . . well, then maybe I just misunderstand what I've read, and maybe that was in litigation with Peslik . . . with LSLAP itself. Well, as I said, a diligent effort is a requirement for an insurance company to get a summary judgment or get a victory on a breach of cooperation clause. And Peslik said it wasn't required to make a diligent effort because there was no notice of the claim. The United case that's so frequently cited by Peslik is a notice of claim case. No notice of claim was given to . . . and no cooperation, too, for that matter. But basically, it was a notice of claim case. Well, let's . . . suppose I'm right. Suppose the judge decided that the claim . . . that the triggering event here was notice, and that because notice was given, and I was wrong when I challenged that otherwise. Notice was given timely within the claims policy, but the judge also said . . . and that means, I'm guessing, under Erie, the . . . if there's a breach of the cooperation clause, the claim . . . the right had already vested in Mr. Hargis to go after Peslik. That's what the judge said. Now that's . . . if that's right, that's . . . to my mind, that's an extension of Louisiana law, and maybe we should certify that to the Louisiana Supreme Court. May I read what I have the judge said? Sure. In some, Louisiana courts have repeatedly emphasized the importance of the coverage triggering event when determining whether a direct action by an injured party is foreclosed. This is at the top of page 15 of my reply brief. When the coverage triggering event occurs, third parties' rights under the direct action statute vest. Here, the coverage triggering event occurred when LSLAP made the reported claim. At that moment, Hargis' claim under the direct action statute vested, subsequent actions by LSLAP do not affect Hargis' right to pursue that claim, but more generally, in the absence of fraud and collusion, a third party's claim under the direct action statute is not foreclosed by breach of the cooperation clause in a claims-made and reported policy so long as the insured properly made and reported the claim during the policy period. Well, you and I are in perfect agreement because that's what I just said to you, quoting or paraphrasing the record at pages 7198 to 197199. The only place I saw the word eerie guess was in Peslich's brief, and when you used that expression, I thought perhaps you were referring to its argument rather than the judge's ruling, and if Judge Doty said that, I apologize for not having picked up on it. Well, that's not the important part. I think the important part, from my perspective, is that this seems to be an extension of that the Anderson and the other cases as to when the respect in which the insured is not bound by the terms and conditions of coverage. Well, it is the exception that this court made in the Cagle case, and it follows the jurisprudence of the Fifth Circuit, so I felt like it was unassailable. National Insurance Company v. Cagle, 68103-905, 1995, Fifth Circuit case. May I briefly address the criminal acts exclusion? Yes. The judge found that the criminal acts exclusion required that an act be criminal, fraudulent, and dishonest in order to be excluded, but then he modified or changed the policy language to replace the word and with the word or, so as to make criminal, fraudulent, or dishonest acts. That is contrary to every rule of construction of an insurance contract or contracts in general. This court in Trinity Industries v. Insurance Company of North America said under Louisiana law a court should interpret an insurance policy under ordinary principles for interpretation of a contract. The intentions of the parties as reflected by the words of the policy should determine the extent of coverage. The court should consider the policy as a whole and interpret the policy to fulfill the reasonable expectations of the parties in light of the customs and usages of the  If a clause remains ambiguous after such consideration, then it should be construed against the insurer. The district court cited Cadwater v. Allstate Insurance Company for roughly the same principles. In other words, the court is not authorized to exercise inventive powers to create an ambiguity where none exists or to make a new contract when the terms express with sufficient clearness the intent of the parties. My favorite quote in all of these things is from a 2019 5th Circuit case where you adopted the language of an 1884 Louisiana Supreme Court case where you quoted, it is too obvious for argument that courts will not add words to a contract for the purpose of ascertaining the true intent of the parties. And I'll cite one more case of yours, Cochran v. BJ Services, for multiple reasons why the decision to modify that contract was wrong, including, you know, construing exclusions strictly against the insurer, but finally, moreover, summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy when applied to the undisputed material facts shown by the evidence supporting the motion under which coverage could be afforded. Coverage was afforded under the unambiguous language of the policy. The policy should not have been amended in order to make it effective to exclude coverage. I think we have that argument, if there are no questions by my colleagues. I say my colleagues have no questions, so I think we have that argument. All right, sir. Mr. Bourgeois. Good morning, Your Honors. Travis Bourgeois on behalf of Princeton Excess. We're the cross-appellant in this case. We take the position that the trial court was absolutely correct on three occasions to rule that it had subject matter jurisdiction. We take the position that the trial court was correct partially in its ruling on the criminal acts exclusion and excluding coverage under the PESLIC provision, excluding liability arising from criminal acts as to the fault of Mr. Simmons and as to the bystander liability claims. We respectfully urge that the trial court erred in failing to exclude all claims, including the claims attributable to Mr. Linder and the vicarious liability of the sheriff. Our third point is that the trial court erred in denying our motion for summary judgment on the cooperation clause. I can tackle those in any order you wish, but I guess the logical place is to start with the diversity of jurisdiction argument. Judge Jones, you were absolutely correct to note that the appellant, Mr. Hargis, could not cite to any cases to support his claim, and we fully defer to Magistrate McCluskey's well-written opinion, which was adopted by the trial judge, that the law is uniform in that the courts have, quote, uniformly held, that a direct action is a suit where a plaintiff sues the insurer without first obtaining a judgment against the insurer, and the cases on that issue are uniformed, Gateway out of the Fourth Circuit, Kong out of the Eleventh Circuit, and those rulings are consistent with this court's ruling in Gorman and Hernandez. The magistrate noted the federal courts have, quote, consistently held. Magistrate judge. The magistrate judge, excuse me, Magistrate Judge McCluskey noted that the courts have consistently held, and, quote, it is no surprise that when a plaintiff has already obtained a judgment, a suit against an insurer is, quote, by no means, quote, a direct action under 28 U.S.C. 1332C. Again, a collection of cases, Lebleu out of the Eastern District, Kong, Bourget out of Connecticut, Craig, Gateway, Russell, Jenkins, Cammie, all of these cases are cited in a brief. We think the issue is well settled. Where the plaintiff has already obtained a judgment against the insured, the insurer is no longer aligned with the insured so as to make diversity jurisdiction in this case. Even if there were a potential issue about that, it's not so here because the insured and this insurer are not aligned. Absolutely correct. We were cross-sued by the insured demonstrating that our interests are not . . . Is that still pending? That is over. That part of the case is over. Mr. Hargis appealed and we cross-appealed because of that. That part of the case is settled, done. Judge Doty adopted the magistrate judge's opinion. Judge Doty denied a second motion to remand after extensive litigation. He said the court was, quote, not alone, close quote, in making the ruling that this is not a direct action under Section 1332 and cited two more cases, Elkins and Carnegiella. Lastly, this court has already denied a motion to dismiss based upon that same argument so literally that's four rulings in our favor. We ask the court to affirm that ruling. With respects to the criminal act exclusion, Pestlik filed a motion for summary judgment seeking to enforce his criminal act exclusion. The policy provision is cited in the brief and precludes coverage for any liability arising out of any criminal, fraudulent, dishonored act or bad faith by an insured arising from the deliberate violation of any federal, state, or local statute, ordinance, rule, or regulation committed by or with the knowledge of, quote, an insured. This case revolves essentially around a wrongful arrest and what happened while Mr. Hargis was in custody. Deputy Simmons struck Hargis causing him some injury. He pleaded guilty to a crime and was adjudicated to be guilty for a crime, also in violation by the jury in this case of 42 U.S.C. 1983 for use of excessive force. So it's absolutely clear that Simmons' conduct is a criminal act and that was excluded. I think that's undisputed in this case and the trial court agreed with us on that. It also held that the bystander claims, and these apply to two other deputies, Deputy Linder and Deputy Williams, bystander claims arose because they witnessed this conduct and unreasonably did not do anything. That is also a violation of section 1983 and the trial court properly found that those were excluded on the criminal acts exclusion. The court had a little problem and denied summary judgment as to the Linder claim because Mr. Linder was found to have committed a separate battery against Mr. Hargis and it denied summary judgment as to the vicarious liability of Sheriff Gilley. First of all, we note that these rulings are contrary with the Louisiana Supreme Court case in Bonin, which we have outlined in the brief. The provisions are very similar, strikingly similar, not identically worded but very similar. The Supreme Court found that these exclusions are not ambiguous, a problem that district court had here. And the Bonin court found that uninsured, the language used in this policy means any insured under the policy and that applies to all the defendants in this case. So let's look at specifically Deputy Linder's liability. Well let's look at the language of the exclusion. Absolutely. The language of the exclusion provides any liability arising out of any criminal, fraudulent, dishonest act arising out of any criminal, fraudulent, dishonest act, bad faith of an insured or arising from the deliberate violation of any federal, state, or local statute, ordinance, rule, or regulation. So what do you do about the coordinate adjectives? The coordinate adjectives in this case, what the trial court did here is it didn't reform the policy, it didn't add words, it applied Louisiana law to read the policy in a way which did not make it unreasonable or absurd and it found that use of the word and instead of or was more appropriate to criminal, fraudulent, dishonest act and bad faith. Well now wait a minute, I thought it added, it inserted and as to criminal, fraudulent, or sorry, or dishonest act. Judge Doty did that, he read the policy in a way which he thought made it make sense because otherwise the exclusion would be meaningless and unimportant. What's your best, I defer to my colleague here who's a Louisiana expert, but what's your best case for saying that you can adapt the policy to make it reasonable? Well, under Louisiana law when interpreting contracts, the court must discern the party's common intent. That's Louisiana Civil Code Article 2045 where the terms of the contract are clear and explicit and do not lead to an absurd consequence. No further interpretation shall be made. That's from reading the words that are there, that's not prescribing adding or subtracting words. That's correct, but each provision in the contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. So we should look at the whole provision in addition to the whole contract. That's rentals versus select properties. Yeah, but the point being if you're going back to the Civil Code in the contract, though, all that's true, discerning the meaning, blah, blah, blah, but where in the Civil Code or Litmanoff or whoever it was, does it say adding or subtracting words in order to discern the meaning? Not the remembrance, it was, you know, you try to figure it out. Right. What they put down there. Right. You try to figure that out. So the reason it means X or Y, that's consistent with civilian methodology. Right. But adding or subtracting words, I just don't remember that as doctrinal civilian reading of the policy. That defeats I'm waiting on a case that says in determining the meaning, one is authorized to add or subtract. In this case, he added, but I would say the same thing about taking a word out. What's the Louisiana Supreme Court cases that say that? Judge Stewart, I think if you look at the rentals property case and the Louisiana Association cases, these are cited in the brief in the Standards of Review for Policy Interpretation. You're absolutely correct that a judge shouldn't take out or insert words, but another principle along with the civil code articles is that the contract should not be giving an absurd meaning, which obviously goes against the intent of the contracting parties. It should be reconciled and the true intention of the parties applied. What the trial court did here is reconciled the words to something that was meaningful and could be applied as contrary to putting in a provision with a contract which had to be taken out or given no meaning. It doesn't seem to be responsive to if you read something and you can't figure it out, it says this doesn't make sense, it's absurd. It says it's either A, ambiguous in which it can mean whatever the most reasonable term can be, or B, it's meaningless. There is no discerning of reason because it was poorly written, whatever, whatever, whatever. Right. But none of that gives energy to adding or subtracting words. I don't disagree with anything you said. Yeah, I understand your position. It's impossible. I've taken a week. I don't understand it. I don't know what they were thinking when they drafted it, but there's no way to come up with either it's ambiguous, it could mean this. So I get it if he said this is ambiguous, thus I'm going to hold that in the ambiguity it means X. I would follow that. But where I get off the train is adding or subtracting words is being consistent with civilian methodology for some case where the Louisiana Supreme Court says that is a tool that can be used to do it. And that's, I'm back in 101. Right, Judge. I understand. And the judgment, the memorandum ruling is lengthy and it sort of twists and turns, but the judge did eventually find the provision ambiguous. Interpretation of a contract is a question of law that that court or this court can do. And I think ultimately at the end of the day, even if you do use the word or instead of and, the activity complained about is criminal. But not fraudulent, not arguably dishonest. Well, let's look at the definition of the 1983 claims where unreasonable force is used and bystander claims where a party willingly refuses to act unreasonably. And I think all of that falls within this. This is squarely, I think, addressed by the Bonin case and by the other cases we cited in our brief where criminal acts exclusions were applied. Well, if it was an ordinary criminal act exclusion, I think we would go on with these bystander liabilities and separate battery and all that. But in the cases, so you're not really resting on the absurd consequences argument at this point? I think it does create an absurd consequence if the interpretation is used to read out any criminal act from this exclusion because it's clearly contemplated by the parties in that contract and what we have here is a third party saying that that provision should be interpreted otherwise. Yeah, I mean the cases about that seem to be saying that we're not going to interpret a contract to exclude all coverage. Right, right, exactly. We've got Huey Littleton from this court where these types of exclusions are deemed to be found routine, unambiguous, and applied. But, I mean, don't they almost always say criminal, fraudulent, or dishonest, or criminal, or fraud, in other words, so they're disjunctive and not serial? I would say the wording of this contract is clear from the wording and can be applied as written.  I see I only have a couple of minutes left, so I'd like to jump into the lack of cooperation argument. And Judge Joan, I think your questions were pertinent. The notice that was given here was in the form of log sheets which are thousands of pages long containing thousands of different claims. And the notice of the claim here was a wrongful arrest. So that continued throughout the notice, throughout the provision of the logs. There was no indication that there was a serious injury. There was no indication that there was a criminal conviction. There was no indication that a trial was coming. There was no indication that there were settlement conferences. There was no indication when the trial happened. And the first actual notice of this judgment came after the judgment was issued, actually after the Sheriff's Office appealed and it was dismissed for non-prosecution. So the context that you were asking, Judge Jones, is what are the disputed facts, because we moved for summary judgment. And I wanted to point to the court to the undisputed facts as found by the trial judge and contained in his memorandum ruling at page 7077 to 7108. And he specifically finds that the first time that the Sheriff's Office or Mount Claims sent a full carrier report of everything that was occurring in this case was after the final judgment. The Sheriff sent Simmons a declination of coverage letter due to his criminal conviction. So we have a criminal conviction, but that wasn't reported to Peslich. Simmons' guilty plea was never reported to Peslich. Peslich made a settlement demand. That wasn't reported. There was a settlement conference. That wasn't reported. There was another settlement conference. That wasn't reported. As of January of 2021, Defense Counsel submitted an assessment with medical records, and Ms. Ledoux of Mount Claims asked that attorney to prepare a full report, quote, because she believed that the hardest claim would likely exceed the LSEP layer of $100,000. That's in January of 2021. Still nothing about this in the logs. And the first notice came after trial in January of the following year. So let's continue with the undisputed facts as found by the trial court. The attorney sent a large loss attorney suit report indicating three separate times that damages could range into the $350,000 range and that Mr. Hargis, quote, had a high likelihood of securing a favorable verdict suggesting a settlement range in the $300,000 range. This was never reported to Princeton. Ledoux testified that she considered reporting it and this would ordinarily happen in a large loss claim, but she did not. I just don't understand that. It's a matter of normal practice. I don't understand either. It's fairly practice. Ledoux said that she relied upon a Facebook video, which was never used at trial, that may or may not have indicated that Mr. Hargis was inflating his injuries. At the end, we get an adverse judgment. So we think that under your power of de novo review that the trial court erred in failing to inflate his injuries. Now, how does that figure into, I mean, because you have this prefatory legal issue, as the judge later found, did the rights of Mr. Hargis attach whenever a claim was made? Judge Jones, that was an excellent question. That was going to be the last thing I argued, and it is. That issue was squarely decided in Gorman v. City of Appaloosa. It's the Louisiana case we cited from 2014. The judge and Mr. Hargis have been proceeding under the Cagle case from this court. With all due respect to the court, the Louisiana law is now settled and is in opposite to Cagle. Gorman holds that the plaintiff was not deprived of any rights, even under the theory that his rights vested earlier than the notice, because the direct action statute, quote, does not extend any greater right to the insured third party who was damaged than to the insurer. Close quote. That case was followed by Simpson. And in Simpson, if you read that case, it's a Second Circuit case. It goes through this progeny, and Cagle relayed on an earlier decision, Futch, and Simpson explains how the law has changed or is well settled. Well, obviously Judge Stoddard didn't think so, but anyway, so we're left with a situation where, assuming that Cagle has been superseded and the Gorman and Simpson say that the plaintiff accedes to whatever rights the insured would have had, if the insured breached the contract, we still don't have a resolution, unless we were to decide that here as a matter of law that a breach of the cooperation clause occurred. I think you can because you are reviewing our motion for summary judgment de novo, and that's exactly the relief we requested. We said that Hargis has no greater rights than the insured in this case, and so if the insured violated the cooperation clause, you're left at the same state, and Hargis's rights are no greater than the insured. Otherwise, you would be rewriting this policy into an occurrence policy, which it's not. It's a claims-made policy with definite conditions, and you would be interfering with the contractual right of the parties, Princeton and the Sheriff's Department, which have a clearly defined coverage, and let's make no mistake about this, this case now as it is before this case is merely about insurance coverage. So I think the subsequent case law has shown that the eerie guess that the court took in Cagle was perhaps a little off and that issue is well settled now, that the injured party has no greater claims than the insured, and if there's a breach that the insurer is entitled to assert against the insured, which vitiates coverage, the same holds true for the injured party seeking insurance coverage. Any questions? I see my time is out. Well, that's okay. I just wanted to address one more issue if the court would indulge me, and this happens on the cooperation clause issue. It seems that Mr. Hargis is having a problem, and the district court, with respect, is guilty of this as well, that Pavlik did not make a diligent effort or no effort to discover anything about the claims. Well, Judge Jones, you probably noted that that's not what this policy requires. This is a claims-made and reported policy, so they have to notice the claim. They have to report all developments. Under the cooperation clause, it falls squarely on the insured or the insured's agents' mount claims in this case to report all significant events, and that simply wasn't done here. So the trial court erred in shifting the burden to Pavlik to prove that it had done something to discover more than it should have under this policy, and it's clear, we think, as described in the briefs, that these claim logs not only provided misinformation but no information. Judge Jones, as you said, this is a minor claim. This is a wrongful arrest. Twenty-five thousand retention. Exactly. And that's all the comments I have unless there are any other questions. I guess not. Thank you, Your Honor. All right. Thank you. Okay, Mr. Roundtree. I still have a hard time wrapping my head around the argument that the statute that inspired the 1964 amendment to Section 1332 is not a direct action. If it's a direct action, Section 1332 precludes a diversity jurisdiction. It's as simple as that. The statute is clear. And when the language of the statute is clear, it should be enforced the way it's written. The other point that I'd like to make is I didn't make up the requirement that the insurance company make a diligent effort in order to get information before there's a violation of the cooperation clause. There's a case called Bankers Insurance Company v. E.M. I guess it's a Roman numeral III Holdings LLC. It's 400 Southern 3rd, 681, page 697. I think it's a 2024 case. Accordingly, for a policy to be deemed void on the basis of noncompliance with a cooperation clause, the insurer must demonstrate that it made, open quote, a diligent effort to obtain the requested information and that the insurer bears the burden of proving that the breach of the cooperation clause was both material and prejudicial. That is the same holding in an Eastern District case in 2017, Illinois Union Insurance Company v. Louisiana Health Service, 257 Federal Supplement 3rd, 763. At the same time, the dismissal of an insurer sued on the basis of a breach of a cooperation clause is a draconian remedy which courts do not ordinarily favor. There are multiple citations. For an insurer to obtain such a dismissal, it must show, this is again quoted, show a diligent effort to obtain bracketed the requested information. Additionally, the insured must show that the insured's breach was both material and prejudicial. Judge Doty found that Peslick did not prove prejudice. No, he found that there was a fact issue and he denied summary judgment. Well, if it had proved prejudice, I think that denial would have been different. But he also pointed out that Peslick made no effort to obtain the information. And that's undisputed. In fact, they admitted it in their brief. They said they didn't need to because they didn't get notice under the policy, which of course Judge Doty found they did and they didn't even appeal. So, you don't have to be overly concerned. I think Judge Doty's analysis in the five pages preceding . . . You know, I don't know why else SLAP. I mean, did you ever represent an insurance company? I mean, it is absurd that when you're asking for what amounts to excess coverage, in fact, the company is Princeton Excess, you're asking for excess coverage. You have a claim that's going to be three times as large as your level of coverage goes. You have to involve that insurer. And in Texas, at least, there is law. I think that if you don't involve that insurer, you get in trouble. But I can't call it off the top of my head right now. So, there is very little question that Princeton Excess was supposed to be kept informed of the status of this litigation. But in order to escape . . . And that's why . . . Have you been paid by LSLEP yet? Yes. Yes. And you didn't . . . you had no incentive to take an assignment of their rights because they were going to lose. I had no need to take an assignment of their rights because I had a right of action under the direct action statute. Okay. And it never occurred to me to take an assignment of their rights. Well, that's the way it works in Texas normally. Well, that's why there's so many cases that are not in direct actions. Because they have to take an assignment from the insurer and that makes it a first-party claim rather than a liability claim. Judge Dody's discussion preceding that language that I read to the Court earlier was very detailed, very involved, and very studious. It was an excellent discussion. And I think it fully justifies his conclusion that fraud or collusion would be required in order to prevent . . . in order for a cooperation clause defense to prevail and prevent a direct action plaintiff to proceed. And I . . . again, I can't see how you can even argue that the statute that inspired the 1964 amendment to 1332 is not a direct action statute. And if it is, the plain language of 1332 says there's no diversity jurisdiction. Okay. Thank you. We have your argument. Thank you. All right. We're adjourned until 9 o'clock tomorrow morning.